STATE EX REL. HERRICK v. HENRY C. SEARCY, MAYOR.

1. SENIORITY OF SERVICE OF POLICEMAN AFFORDS NO PREFERENCE IN CASE OF REDUCTION OF CITY FORCE.

Seniority of employment in the classified service of municipalities entitles incumbents in office thereunder to no preference over others subsequently acquiring positions in such service by virtue of examinations under the merit system, except as provided by Sec. 165 of the Mun. Code of 1902 (Lan. Rev. Stat. 3153; B. 1536-701) in cases of promotion from one rank to another. Hence, in reducing the number of patrolmen of a city, pursuant to ordinance of its council, the board of public safety may reclassify its police force regardless of the length of service of its members.

2. POWER OF MUNICIPAL COUNCIL TO REDUCE NUMBER OF PATROLMEN.

Section 227 of the Mun. Code of 1902 (Lan. Rev. Stat. 3230; B. 1536-1005), authorizing municipal councils to fix the number of employes in the department of public safety, gives councils authority to reduce the number of its patrolmen.

3. RETAINING POLICEMEN IN OFFICE AT ADOPTION OF CODE GIVES NO BETTER STATUS THAN CIVIL SERVICE EXAMINATION.

Sections 167 and 213 (Lan. Rev. Stat. 3156, 3229; B. 1536-703, 1536-912), providing that no removals in the civil service list shall be made except for cause, and continuing in office certain municipal employes, are provisional in their scope and were intended to give incumbents their status under the new code, but they give no higher status or greater right to position than those subsequently placed in employment by examination under the merit system.

[Syllabus approved by the court.]

MANDAMUS.

Prior to November, 1908, the police force of the city of Portsmouth consisted of a chief and twenty patrolmen, including a turnkey. At that time the city council, by an ordinance repealing a former ordinance, reduced the force of patrolmen from twenty to eleven. Pursuant to the ordinance, the board of public safety again classified its force of police, naming the eleven men who were to constitute the reorganized force of patrolmen from the incumbents and sent their names to the mayor, who notified the nine patrolmen who were not retained on the force that they had been dropped from the pay-roll. The eight relators appearing as plaintiffs were among the nine discharged or dropped. Five of the eight were patrolmen when the municipal code took effect, and these five, as well as the three other relators, in point of seniority of service, had been on the force longer than some of the

patrolmen retained by the board of public safety in its reorganization of the police force.

**Milner, Miller & Searl,** for plaintiff.

**H. L. Small,** city solicitor, for defendant.

**JONES, J.**

The relators seek, by mandamus, to be restored to their rank and place upon the police force. Inasmuch as five of the relators were incumbents on the force when the new code went into operation and because they, as well as the other three relators, in length of time of service, had continuously served longer than some others who were retained by the board after the reduction of the force by the city council, it is urged on their behalf:

First. That the five incumbents when the code took effect are entitled to preference over other patrolmen later placed on the force of the department.

Second. That in any event, because of continuous seniority of service on the force, these eight relators were entitled to preference over those of lesser rank in that regard, and that the implied intendment of the merit system found in the code is that such seniority of service must be maintained in making removals, when the entire force has been reduced by the city council.

By Sec. 227 of the code (Lan. Rev. Stat. 3230; B. 1536-1005), the city council had authority to determine, by ordinance or resolution, the number of employes in the department of public safety. This the city council did, and fixed the number of patrolmen at eleven, and repealed its former ordinance. It is conceded that the council had this authority. In the drafting of the municipal code while the legislature had in view the application of the merit system to possible increases of the force and to individual removals therefrom for specific causes, it did not make any provision whatever for a material reduction of the force of employes by the action of the city council.

In arriving at a proper conclusion, upon an examination of the various provisions of the code, we think that the general power of appointment and removal of the employes of the police department has been conferred upon the board of public safety by Sec. 129 of the code (Lan. Rev. Stat. 3117; B. 1536-636). Section 158 (Lan. Rev. Stat. 3147; B. 1536-694), is not helpful of the question, as that section is provisional and is intended to provide for the operation of the new code by the certification of the names of old incumbents to the mayor. It did not contemplate that, upon the selection of every new board of

State v. Searcy.

public safety, a reorganization of the police department should follow ex necessitate. This seems to be the view in State v. Wyman, 71 Ohio. St. 1, 11 [72 N. E. Rep. 457].

Section 129, supra, provides that the directors of public safety, "subject to the limitations herein prescribed," shall have the exclusive power of appointment and the sole power of removal of the employes in its department. This power so conferred by this section is explicit, general and broad in its scope; the board's power is limited only by such limitations elsewhere found in the act. An examination of the code will show that this limitation is confined to individual removals made for cause and upon hearing. The patrolman is suspended for a specified cause as provided in Sec. 152 (Lan. Rev. Stat. 3141; B. 1536-688), and under Secs. 167 and 186 (Lan. Rev. Stat. 3156, 3175; B. 1536-703, 1536-722), upon the patrolman's removal, the mayor's act is certified or appealed, as the case may be, to the board of public safety. This seems to be the only limitation of the broad power of removal conferred on the board by Sec. 129: such cases are limited to individual removals for cause. Otherwise the board's "sole" power of removal is not curtailed. We can not otherwise give effect to the act of council in reducing the police force.

It is urged that five of these relators have an especial right to be retained because they were on the force when the new code took effect. The municipal code stipulates that the merit system shall be maintained, and by the provisions of Secs. 167 and 213 of the code (Lan. Rev. Stat. 3156, 3229; B. 1536-703, 1536-912), it is provided that no removals shall be made except under the provisions of the act. These sections were provisional and were intended to give incumbents their status under the new code; the sections did not give them a higher status or a greater right to position than those subsequently placed on the force by examination under the merit system. They are not entitled to preference under any provision of the code. If this action of the board were being taken at the first organization of the force, following the adoption of the code, and not at a later reorganization, the board could have selected any of the old incumbents it desired, without regard to seniority, under Sec. 158. See opinion of Summers, J., in State v. Hall, 25 O. C. C. 361, 370 (2 N. S. 237, 246).

However, it is impossible to apply seniority of service as a sine qua non, even if we attempt to enforce the merit system found in the code. And this, for the reason seniority of service is referred to in the code in Sec. 165 (Lan. Rev. Stat. 3153; B. 1536-701), in cases of promotion only. Again, in the scheme of merit adopted by the code,

Jackson County.

in so far as patrolmen are concerned, they obtained position by an examination upon qualifications in which seniority was not even an element. Once on the force, all of the patrolmen were on an equality. Those retained were all merit men. The older incumbents had no greater right or priority than those subjected to physical and other examination who got on the force later.

It is insisted that the action of the city authorities, if upheld, would tend to destroy the entire purpose of the merit system. It is undeniable that the police force might be radically changed and new members placed thereon; but after all that may or can be done, the merit idea is not destroyed, for in any event, as in this case, the patrolmen retained must be merit men,—men who passed the requisite examinations.

It is not the province of this court to cast a new merit system, or to lick one into shape to meet new conditions. We leave that to another branch of the government. The merit system devised, was to meet the contingency of increases in the force and of individual removals for cause. Farther it does not apply. To meet the contingency that has arisen in this case, where a material reduction has been made in the police force, as is now suggested by counsel for relators by the application of the element of seniority of service, would be to enlarge judicially the scope of the act where the legislature had failed. The language of the learned judge, in commenting on the merit system in the case of State v. Baldwin, 77 Ohio St. 532, 552 [83 N. E. Rep. 907], can well be quoted here:

"But the wisdom of it, or effectiveness of it, is not a matter for our consideration. We have only to determine what the legislature in its wisdom has prescribed."

It might have been well had the relators made the members of the board of public safety parties to this suit, since the acts of removal were made by that board, but since no question of parties was made by counsel, we also have concluded to ignore it, and we decide the controversy upon its merits.

While issue has been joined by the petition and its amendments and the mayor's answer, the material facts are admitted by those pleadings.

The demurrer to the answer will be overruled, mandamus refused, and petition dismissed with costs.

**Walters** and **Cherrington, JJ.,** concur.